147 T.C. No. 3

UNITED STATES TAX COURT

WHISTLEBLOWER 11099-13W, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11099-13W.                    Filed July 28, 2016.

Whistleblower petitioned for review of the IRS' decision not to make an award to him for information that purportedly led to the collection of unpaid taxes and other amounts. He moved to compel production of documents. R objects principally on grounds of relevance.

<u>Held</u>: R's claim of lack of relevance presents an unsettled question of law as to when the IRS proceeds on the basis of information provided by a whistleblower. <u>See</u> I.R.C. sec. 7623(b)(1); sec. 301.7623-2(b), Proced. & Admin. Regs.

<u>Held</u>, <u>further</u>, the Court will not in the context of this discovery dispute decide a question of law; if respondent is interested in a pretrial ruling on matters of law, his proper course of action under our Rules would be to file a motion for summary judgment.

<u>Held</u>, <u>further</u>, R has failed to carry his burden of showing that the documents need not be produced.

<u>Held</u>, <u>further</u>, we will grant the motion.

Henry S. Lovejoy, Usman Mohammad, Bryan C. Skarlatos, and Brian C. Wille, for petitioner.

Navid Mehrjou and Marianna Lvovsky, for respondent.

OPINION

HALPERN, Judge: This is a case brought under section 7623(b)(4),[1] appealing respondent's determination not to make an award to petitioner for information provided by him and leading to the recovery of unpaid taxes and other amounts (a so-called whistleblower award). Petitioner has moved to compel production of documents (motion); respondent has responded to the motion (response) and objects to our granting it. We will grant the motion.

Background

Discovery Dispute

The motion reflects the continuation of a discovery dispute that we addressed by order dated September 16, 2015 (Sept. 16 order), in which we granted petitioner's previous motion to compel production of documents and

_____

[1]Except as otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

ordered respondent to produce the requested documents.[2]  In response to the Sept. 16 order, respondent did produce certain documents.  The motion prays that we compel respondent to produce 31 information document requests (IDRs) and responses (without distinction, requested IDRs) that petitioner believes respondent should have produced pursuant to the Sept. 16 order.  Respondent's principal ground for objecting to production of the requested IDRs is "relevance".

Petitioner's Whistleblower Claim

In 20__ (year 1), petitioner filed a whistleblower claim with the Internal Revenue Service (IRS) in which he informed the IRS of a tax evasion scheme (TES) carried out by a target corporation and its affiliates (target).  The TES, as described by petitioner, involved target's engaging in an inventory purchasing scheme that, on account of target's use of a last-in, first-out (LIFO) method of accounting for inventory, allowed it to artificially inflate its cost of goods sold for tax purposes.  Petitioner claims that target used the TES to defer income taxes indefinitely.  He claims that he was employed by a corporation (corporation X)

---

[2]Respondent had objected to petitioner's previous motion on the grounds that the scope of our review under sec. 7623(b)(4) should be limited to the administrative record and that the information that petitioner sought was outside of that record and, therefore, irrelevant. We granted petitioner's previous motion, relying in part on Whistleblower One 10683-13W v. Commissioner, 145 T.C. __, __ (slip op. at 6-7) (Sept. 16, 2015), in which we held that the Commissioner cannot unilaterally decide what constitutes an administrative record.

affiliated with target that traded commodities that were integral to the purchasing scheme that he had described. The parties agree that petitioner identified an issue previously unknown to respondent and that respondent subsequently investigated target's use of the TES. Respondent's position, however, is that he did not use petitioner's information to make any adjustments to target's tax returns. He states that his agents added the TES to their examination of target's tax returns for two of its taxable years (years 1 and 2, respectively) but that because they were unable to discover anything to substantiate petitioner's claim that the TES violated Federal tax law, he made no adjustments and collected no proceeds on account of petitioner's information. He does admit to making other adjustments to target's returns for years 1 and 2, which apparently resulted in the collection of additional taxes from target.

Petitioner believes that, before the end of year 2, because of the information he provided to the IRS, target stopped using the TES, which increased its year 2 tax bill and would increase its tax bills for subsequent years. Petitioner identifies inventory-related adjustments of $273.7 million and $13.3 million that respondent made to petitioner's year 1 and year 2 reported income tax, respectively, and that petitioner claims are "in the very area--LIFO valuation--that had been the subject of * * * [petitioner's] Whistleblower Claim." Finally, petitioner claims that, in

year 5, target announced its abandonment of the use of LIFO altogether. That, according to petitioner, increased its tax bill by at least $3 billion for subsequent years. Petitioner believes that he is entitled to an award because it was his information that caused target to pay, and the IRS to collect, additional tax.

Petitioner has sought discovery to show that it was his information that led both to an immediate increase in tax collected from target and to larger, future tax bills for target because of its changed behavior. By the Sept. 16 order, we required respondent to produce documents relating to the three inventory-related adjustments for years 1 and 2 that petitioner had identified; documents that might indicate that there were more TES-related adjustments of which petitioner was unaware; documents mentioned in other documents that appear to relate to adjustments or to the whistleblower investigation; and documents that petitioner believed would help him compute the amount of additional tax target paid as a result of stopping its use of the TES; as well as all nonproduced documents created by the IRS and related to petitioner's whistleblower claim, along with all nonproduced documents received by the IRS from target as a result of his claim.

Respondent's Production of Documents

Respondent did produce in response to the Sept. 16 order documents that petitioner characterizes as showing that, far from the limited investigation of the

TES that respondent originally claimed had occurred, the IRS had conducted a broad and far-ranging investigation of target's inventory purchasing practices, which resulted in dozens of IDRs issued by multiple IRS practice groups over many years. That investigation, petitioner reiterates, resulted in radical changes to target's inventory practices and in numerous adjustments to target's reported tax, all of which resulted in respondent's collecting additional Federal tax from target.

On December 22, 2015, petitioner wrote to respondent, notifying him of the deficits that petitioner perceived in respondent's compliance with the Sept. 16 order and identifying certain IDRs (including responses) that he believes respondent should have produced. Respondent did not rectify petitioner's perceived faults in respondent's production. The motion followed, and petitioner prays that we require respondent to produce the requested IDRs.

Of the requested IDRs, 11 are IDRs (and responses) identified in petitioner's December 22, 2015, letter to respondent that relate to corporation X's inventory procurement practices, its organizational structure, its hedging and related activities (undertaken, petitioner claims, to minimize the financial risks associated with target's purchases to implement the TES), and its compensation practices (as some evidence of whether corporation X's purchases were tax motivated). An additional 17 of the requested IDRs are IDRs (and responses) that petitioner did

not identify in his December 22, 2015, letter to respondent but the existence of which respondent had disclosed to petitioner in a log produced in response to the Sept. 16 order. Petitioner identifies those IDRs as addressing target's use of corporation X to carry out the TES (e.g., concerning hedging transactions, commodities trading and procurement, derivatives reconciliation, training programs, and employees' performance and compensation). Finally, petitioner specifies three IDRs identified in the December 22, 2015, letter and not relating to corporation X that prompted respondent to issue two IDRs that respondent did produce and that sought information on target's cost of goods sold calculations for the two years prior to year 1. Petitioner argues that, if the resulting IDRs were deemed relevant by respondent, then the three causal IDRs should be produced as well.

The Response

In the response, respondent does not contradict petitioner's representations about the scope of his examination of target. Respondent concedes: "The documents he demands may well illuminate various portions of the audit". Respondent insists, however, that the IDRs petitioner requested deal not with the TES but with other issues that were part of the IRS' examination of target and its subsidiaries--primarily transfer pricing issues between target and its subsidiaries.

He also objects to producing four IDRs that were identified in petitioner's December 22, 2015, letter to him on the ground that petitioner had not sought those IDRs in formal discovery. As to the 17 IDRs not identified in that letter, he "notes" in a footnote to the response that petitioner did not informally seek to resolve respondent's objection to producing them and that the motion is the first time that he learned that petitioner considered them relevant.

In support of his relevance objection, respondent states with respect to the requested IDRs: "[S]uch documents are not relevant, nor are such documents reasonably calculated to lead to the discovery of admissible evidence with respect to respondent's use of the petitioner's information, respondent collecting proceeds based on petitioner's information, or respondent's consideration and evaluation of petitioner's whistleblower claim."

## Discussion

### I. Section 7623 (Whistleblower Awards)

Section 7623 provides for awards to those individuals (i.e., whistleblowers) who provide information to the Government about third parties who are underpaying their tax. Specifically, section 7623(b)(1) provides: "If the Secretary proceeds with any administrative or judicial action * * * based on information brought to the Secretary's attention by an individual, such individual shall * * *

receive as an award at least 15 percent but not more than 30 percent of the collected proceeds * * * resulting from the action (including any related actions) or from any settlement in response to such action."

II.     Relevance

As pointed out in Professor McCormick's treatise on evidence: "There are two components to relevant evidence:  materiality and probative value."  1 McCormick on Evidence, sec. 185, at 994 (7th ed. 2013).

> Materiality concerns the fit between the evidence and the case. It looks to the relation between the propositions that the evidence is offered to prove and the issues in the case.  If the evidence is offered to help prove a proposition that is not a matter in issue, the evidence is immaterial.  What is "in issue," that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law.  * * *
>
> *   *   *   *   *   *   *
>
> The second aspect of relevance is probative value, the tendency of evidence to establish the proposition that it is offered to prove. * * *

Id. at 994-995.

Rule 401 of the Federal Rules of Evidence incorporates the twin concepts of materiality and probative value.  Id. at 995.  Under that rule, evidence is relevant if (a) "it has any tendency to make a fact more or less probable than it would be

without the evidence" and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401. The rule thus replaces the term "material" with the equivalent expression "fact [that] is of consequence * * * [to the] determin[ation of] the action." See id. subdiv. (b). "A fact that is 'of consequence' is material". McCormick, supra, sec. 185, at 995.

Rule 70 governs discovery, and paragraph (b) thereof provides that the scope of discovery is "any matter not privileged and which is relevant to the subject matter involved in the pending case." The paragraph further provides: "It is not ground for objection that the information or response sought will be inadmissible at the trial, if that information or response appears reasonably calculated to lead to discovery of admissible evidence".

III.    Respondent's Argument

Respondent does not in the response make clear which of the requested IDRs are irrelevant because they are not material and which are irrelevant because they lack probative value (or which are irrelevant for both reasons).[3] Indeed,

---

[3]The term "relevant" has a different meaning--and narrower scope--under Fed. R. Evid. 401 than it does under Rule 70(b), our discovery Rule adopted in 1973 and based on Fed. R. Civ. P. 26(b)(1). See Rule 70 note, 60 T.C. 1098 (adoption of Rule 70(b)); cf., e.g., Cartagena v. Centerpoint Nine, Inc., 303 F.R.D. 109, 112 (D.D.C. 2014) (scope of Fed. R. Civ. P. 26(b)); 8 Charles Alan Wright et al., Federal Practice and Procedure, sec. 2008, at 125-126 (3d ed. 2010) (similar).

(continued...)

respondent does not distinguish those two components of relevant evidence. Nevertheless, it is clear that respondent would have us deny the motion on the ground that none of the requested IDRs contradict, or would lead to discovery of admissible evidence that would contradict, his claim that he did not proceed on the basis of petitioner's information to make any adjustment in target's tax. Respondent does not deny that, on the basis of petitioner's information, he added the TES to his examination of target for years 1 and 2, nor does he deny that he made adjustments to target's income for those two years. What he does deny is that he proceeded on the basis of petitioner's information about the TES to make those adjustments (or to make any other adjustments). Implicitly, he is making an argument about the meaning of the term "proceeds * * * based on" in section 7623(b)(1). By emphasizing that he made no adjustments "on petitioner's issue," he implies that the Secretary proceeds with an administrative adjustment based on a whistleblower's information only when the adjustment redresses the specific errors in tax reporting alleged by the whistleblower. Although he fails to refer to either, respondent's implicit argument about the meaning of the term "proceeds

---

[3](...continued)
Rule 70(b) permits discovery of non-privileged matters "relevant to the subject matter involved in the pending case." We assume that respondent's relevancy objection to the requested IDRs is made on the basis of the narrower, Fed. R. Evid. 401 definition of the term (requiring probative value and materiality).

based on" may have some purchase in the wording of section 7623(b)(1) and of an implementing regulation, as will be discussed below. On the basis of his implicit claim about that meaning, we assume respondent's argument is that he has no authority to make a whistleblower award to petitioner. And because petitioner does not contradict respondent's claim that he made no adjustments "on petitioner's issue," the requested IDRs are beside the point and, therefore, not material.

We will discuss below whether the interpretative question that respondent's relevance objection raises is appropriately before the Court in this discovery dispute. Since we conclude that it is not, we will determine whether respondent has appropriately objected to production of the disputed IDRs on other grounds, viz, the irrelevance of the requested IDRs because they are not probative of any consequential fact.

IV.   Petitioner's Argument

To petitioner, it does not matter that respondent did not act to shut down the TES on the basis of his information. To petitioner, it is a sufficient justification for an award that the investigation respondent undertook on the basis of his information put target on notice that the TES was under scrutiny by the IRS. That, he believes, caused target (1) to abandon elements of the TES, which almost

immediately resulted in its paying more tax and (2) eventually, to abandon LIFO, which resulted in billions of dollars in increased tax collections. Moreover, petitioner believes that respondent derived leads from the investigation that he undertook on the basis of petitioner's information and that those leads led to respondent's making adjustments for years 1 and 2 to target's reported income that are attributable to his information.

In contradistinction to respondent's apparent view that an award under section 7623(b)(1) requires identification of an adjustment to a target's tax that redresses the specific errors in tax reporting alleged by the whistleblower, petitioner apparently believes that merely showing a causal relationship is sufficient (in other words: "one thing led to another").

## V. Analysis

### A. Respondent's Implicit Legal Argument

Section 301.7623-1, Proced. & Admin. Regs., defines terms used in section 7623 and in the regulations interpreting it.[4] In pertinent part, section 7623(b)(1)

---

[4]Pursuant to sec. 301.7623-1(f), Proced. & Admin. Regs., the section is effective on August 12, 2014, and applies to information submitted on or after that date and to claims for award that are open on that date. The determination that petitioner appeals from is dated April 17, 2013. The petition was filed on April 20, 2013. We assume for purposes of the following discussion that petitioner's

(continued...)

provides authority for an award to a whistleblower if the Secretary proceeds with a

collection action that is "based on information brought to * * * [his] attention" by

a whistleblower.  Section 301.7623-2(b)(1), Proced. & Admin. Regs., addresses

when the IRS shall be deemed to proceed on the basis of information provided by

a whistleblower.  In pertinent part, the regulation provides:

> [T]he IRS proceeds based on information provided by a whistle-
> blower when the information provided substantially contributes to an
> action against a person identified by the whistleblower.  For example,
> the IRS proceeds based on the information provided when the IRS
> initiates a new action, expands the scope of an ongoing action, or
> continues to pursue an ongoing action, that the IRS would not have
> initiated, expanded the scope of, or continued to pursue, but for the
> information provided.  The IRS does not proceed based on
> information when the IRS analyzes the information provided or
> investigates a matter raised by the information provided.

Four examples follow that statement of the general rule.  Example (2)

involves a whistleblower-prompted investigation of a taxpayer during the course

of which the IRS obtains through IDRs and summonses facts that are unrelated to

the activities described in the information provided by the whistleblower.  On the

basis of those additional facts, the IRS expands the scope of its investigation of the

taxpayer.  In part, the example concludes that the portions of the IRS' investigation

---

[4](...continued)
claim for an award is open so long as it is sub judice, notwithstanding that the
parties have not addressed the issue of whether the regulation applies.

relating to the additional facts obtained through the issuance of IDRs and summonses are not actions with which the IRS proceeds on the basis of information provided by the whistleblower because the information provided did not substantially contribute to the IRS' administrative action based on the information provided by the whistleblower.  Sec. 301.7623-2(b), Example (2), Proced. & Admin. Regs.

We need not at this point in the case address the merits of respondent's lack-of-authority argument, which respondent has not fully developed.  Petitioner's case, grounded on the legal theory that the IRS collected proceeds from target on the basis of petitioner's information about the TES, is well pleaded.  It is not obviously contradicted by section 7623(b)(1).  The validity of section 301.7623-1, Proced. & Admin. Regs., has not been tested, nor does respondent argue that it applies.  The proper interpretation of section 7623(b)(1) is something that the Court may decide in due course during these proceedings upon argument or briefing by the parties.  If respondent is interested in a pretrial ruling from the Court on matters of law, then his proper course of action under our Rules would be to file a motion for summary judgment under Rule 121.  See Hosp. Corp. of Am. v. Commissioner, T.C. Memo. 1994-100, 1994 WL 79522, at *3.  Respondent has

not convinced us that the requested IDRs are not material and, for that reason, not discoverable.

## B. Further Relevance Objection

Nor has respondent convinced us that the requested IDRs are not probative of, or would not lead to admissible evidence with respect to, petitioner's theory of the case. Undoubtedly, if we understand it correctly, petitioner's interpretation of the term "proceeds based on" is broad; i.e., that the Secretary proceeds on a whistleblower's information if there is merely a causal relationship between the whistleblower's information and the Secretary's collection of additional tax (whether that additional tax is collected on the basis of adjustments to a taxpayer's reported tax or on changes in the taxpayer's behavior in reporting its tax). Section 7623(b)(1) may not support that broad interpretation. But, in a discovery dispute, once the discovering party makes some minimal showing of the relevance of the information or response sought to the subject matter involved in the pending case, the party opposing the production of information has the burden of establishing that the documents sought by the other party are not relevant or otherwise not discoverable. See, e.g., Dynamo Holdings Ltd. P'ship v. Commissioner, 143 T.C. 183, 189 (2014). Respondent has failed to carry his burden of showing that the requested IDRs are not discoverable.

C.    Other Arguments

Respondent's principal objection to the motion is, as we have discussed, relevance.  He also objects to producing four of the requested IDRs on the ground that petitioner cannot move to compel discovery for documents that he has not sought through discovery.  Petitioner, by his December 22, 2015, letter made known his request for those four IDRs, and we see no benefit to making petitioner ask again for something respondent has made clear he will not produce except upon order of the Court.  With respect to the 17 IDRs petitioner did not identify in that letter, we likewise see no benefit in making petitioner take any further steps to make his request for those IDRs clear to respondent.

VI.    Conclusion

Cognizant of the importance of the confidentiality concerns and disclosure restrictions embodied in section 6103, we will in our order granting the motion require that all documents produced by respondent be subject to the protective order governing pretrial discovery in this case.

An appropriate order will be issued.